UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN THE MATTER OF A DOCUMENT
SUBPOENA SERVED IN:

SCOTT MACKEY AND DANIEL HERNANDEZ, *on
behalf of themselves and others similarly situated*,

Plaintiff,

-v-

IDT ENERGY, INC.,

Defendant.

19 Misc. 29 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion, under Federal Rule of Civil Procedure 45(d)(3), to quash

a third-party subpoena. Movant Fluent, LLC ("Fluent") seeks to quash a subpoena served on it

by Daniel Hernandez in *Mackey v. IDT Energy, Inc.*, No. 18 Civ. 6756 (N.D. Ill. 2008) (the

"underlying litigation"). The Court grants the motion in part and denies it in part.

I.    **Background**[1]

A.    **Facts**

1.    **The Underlying Litigation**

Fluent provides marketing information to clients including IDT Energy, Inc. ("IDT"), an

energy services company. *See* Dkt. 3 ("Fluent Mem.") at 2; Fluent Mem., Ex. 2 ("Compl.") at 4.

On October 5, 2018, Mackey and Hernandez (together, "plaintiffs") filed a putative class action

---

[1] The following facts are drawn from the complaint in the underlying litigation and Fluent's
memorandum of law in support of the motion to quash and the exhibits attached thereto.

lawsuit in the United States District Court for the Northern District of Illinois. *See Mackey*, No. 1:18-cv-06756 (N.D. Ill. 2018).

Plaintiffs' lawsuit alleges that IDT violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), by making unauthorized and unwanted calls to them. Compl. ¶ 1. The TCPA prohibits the use of "any automatic dialing system" to call or text a cellular telephone without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA authorizes a private right of action to individuals "who [have] received more than one telephone call within any 12-month period by or on behalf of" an entity in violation of the regulations prescribed under § 227(b). *Id.* § 227(b)(3). Successful plaintiffs in TCPA cases may recover "actual monetary loss or $500 for each violation, whichever is greater." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016). Treble damages are available for willful and knowing violations of the Act. *Id.*

Specifically, plaintiff Mackey claims that between fall 2016 and early 2017, he received telemarketing calls on his cellphone from, or on behalf of, IDT. Compl. ¶ 22. Upon answering, he would have to say "hello" multiple times before a person began to speak on the line, indicating that these calls were made using an automatic telephone dialing system ("ATDS"). *Id.* ¶ 25. Plaintiff Hernandez claims that beginning in March 2018, IDT used ATDS to call his cellphone repeatedly to solicit his business without his prior written consent. *Id.* ¶¶ 37–45. Plaintiffs allege that their cellphone numbers were each registered on the National Do-Not-Call Registry for more than eight years before receiving the calls at issue in this case. *Id.* ¶¶ 22, 36. They allege that IDT engaged in similar unlawful practices against persons in two nationwide classes during the four-year period preceding the filing of the Complaint—one, a class of cell phone users; the other, a class of persons on the National Do-Not-Call registry.

On November 30, 2018, IDT filed its answer with affirmative defenses. No. 18 Civ. 6756 (N.D. Ill. 2008) at Dkt. 13 ("Answer"). These included that, as to Hernandez, any TCPA claim is barred because, in completing his registration on a Fluent-owned and operated website, Hernandez had given "express written consent to be contacted by or on behalf of IDT." *Id.* ¶ 45. IDT argues that at the time Hernandez purportedly consented to be contacted, he had also agreed in writing that any dispute would be submitted to arbitration for resolution. Fluent Mem. at 3. As to Mackey, defendants dispute that they ever called his number. Answer ¶¶ 23–25, 29–30.

Fact discovery in the underlying litigation is ongoing. The fact discovery deadline is October 30, 2019, and the expert discovery deadline is February 28, 2020. *Id.* Dispositive motions are due May 1, 2020. Dkt. 22 ("Rule 26(f) Report") at 4. Plaintiffs have not yet filed the anticipated motion for class certification. Neither party has moved to compel arbitration.

### 2. The Subpoena

On January 7, 2019, Hernandez served a subpoena *duces tecum* on Fluent. Fluent Mem., Ex. 1 ("Subpoena"). The Subpoena makes nine requests for documents. Most seek documents relevant to plaintiffs' claims on behalf of the putative class. One request, Request No. 7, is keyed to Hernandez. None reference Mackey.[2]

The nine requests are as follows. Request No. 1 seeks "[a]ll calls and text messages made for [IDT] since January 1, 2015," and documents reflecting, *inter alia*, the identities of the person Fluent was trying to reach; the date and time of the call; the text of the response, if any, to the call; and "the prior express consent of the called party." *Id.* at 4–5. Request No. 2 seeks "documents sufficient to identify" any third party in possession of documents responsive to

---

[2] The record does not disclose why Mackey, and documents related to him, are not included on the face of the subpoena.

Request No. 1. *Id.* at 4. Request No. 3 seeks records "reflecting the source(s) of the telephone numbers provided to [IDT]." *Id.* Request No. 4 seeks records "reflecting [Fluent's] process for obtaining consent for other companies to send telemarketing calls" on its behalf. *Id.* Request No. 5 seeks records reflecting any express consent Fluent claims to have obtained from called individuals. *Id.* at 5–6. Request No. 6 seeks documents regarding the websites through which Fluent claims to have obtained such consent, including, *inter alia*, the specific webpages that Fluent "claim[s] constitute[s] consent or permission," "access and error logs and security and fraud alerts" for those websites, the identity of "any vendor or company used for any website responsive to these requests that is used by that website for visitor traffic reporting," the "bandwidth usage for any website responsive to these requests during the [] period you claim visits to that website constituted consent or permission to contact any putative class member with telemarketing calls promoting IDT's Energy goods or services," and the identity of third parties in possession of documents responsive to this request. *Id.* at 6. Request No. 7 seeks all documents related to Hernandez and his phone number. *Id.* Request No. 8 seeks all communications concerning IDT. *Id.* Request No. 9 seeks all communications between Fluent and any third party concerning the underlying litigation. *Id.*

### B.    Procedural History

On January 22, 2019, Fluent filed a motion in this Court to quash the Subpoena, Dkt. 1, and a supporting memorandum of law and accompanying exhibits. Dkt. 3. The exhibits include the Subpoena, Dkt. 3-1; the underlying Complaint, Dkt. 3-2; and an affidavit of Harshit Cokshi, Dkt. 3-3 ("Cokshi Aff.").

On February 12, 2019, plaintiffs filed an opposing memorandum of law, Dkt. 10 ("Resp. Mem."), an affidavit from Hernandez, Dkt. 10-1 ("Hernandez Aff."), and the parties' Rule 26(f)

Initial Planning Report submitting in the underlying litigation, Dkt. 10-2.

On February 19, 2019, Fluent filed a reply. Dkt. 11.

## II. Applicable Legal Standards

Federal Rule of Civil Procedure 45(a)(1) allows a party to serve a subpoena on a non-party for the production of documents. *See* Fed. R. Civ. P. 45(a)(1). Under Rule 45(d), the subpoena recipient may move to quash or modify the subpoena if it "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i)–(iv). Among the geographical limits is that a subpoena may compel only the "production of documents, electronically stored information, or tangible things at a place *within 100 miles* of where the person resides, is employed, or regularly transacts business in person[.]" Fed. R. Civ. P. 45(c)(2)(A) (emphasis added).

On a motion to quash, "[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Night Hawk Ltd. v. Briarpatch Ltd.*, No. 03 Civ. 1382 (RWS), 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003). "A subpoena that pursues material with little apparent or likely relevance to the subject matter . . . is likely to be quashed as unreasonable even where the burden of compliance would not be onerous." *Kirschner v. Klemons,* No. 99 Civ. 4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) (internal quotation marks and citation omitted).

The relevance standards set out in Federal Rule of Civil Procedure 26(b)(1) apply to discovery sought from non-parties. *Citizens Union of City of N.Y. v. Attorney General of N.Y.*,

269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017) (citing *Malibu Media, LLC v. Doe*, No. 15 Civ. 3147,

2016 WL 5478433, at *2 (S.D.N.Y. Sept. 29, 2016)). Rule 26(b)(1) provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "The party seeking discovery bears the initial burden of proving the

discovery is relevant." *Citizens Union of City of N.Y.*, 269 F. Supp. 3d at 139.

If the party issuing the subpoena establishes the relevance of the materials sought, the

burden then shifts to the movant to demonstrate an undue burden. *See Griffith v. United States,*

No. M8-85 (JFK), 2007 WL 1222586, at *2 (S.D.N.Y. Apr. 25, 2007). "Whether a subpoena

imposes an undue burden depends upon such factors as relevance, the need of the party for the

documents, the breadth of the document, the time period covered by it, the particularity with

which the documents are described and the burden imposed." *Night Hawk Ltd.*, 2003 WL

23018833, at *8. Where a subpoena seeks discovery from a non-party, the district court may

consider factors such as the expense or inconvenience that compliance would cause. *See*

*Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996). The trial court has

broad discretion to determine whether a subpoena imposes an undue burden. *See Jones v.*

*Hirschfeld,* 219 F.R.D. 71, 74 (S.D.N.Y. 2003).

## III.    Discussion

Fluent argues that this Court should quash the Subpoena for two reasons: First, Fluent

contends, the Subpoena demands that documents be produced beyond the 100-mile geographical

limit specified in Rule 45(c). Fluent Mem. at 3. Second, Fluent argues, complying with the

Subpoena would be unduly burdensome, given (1) the prospect of compelled arbitration, (2) the fact that a class has yet to be certified, and (3) its status as a non-party. *Id.*

Opposing the motion to quash, Hernandez contends that when documents are produced electronically, production occurs at the location where they are uploaded, thereby satisfying the 100-mile requirement of Rule 45(c). Resp. Mem. at 2. In addition, as to Fluent's contention that the Subpoena is unduly burdensome, Hernandez responds that (1) he never consented to be contacted by IDT or its agents or to litigate his claims through arbitration, (2) the information sought in this Subpoena is necessary to obtain class certification, and (3) Fluent has not offered evidence that electronic production will be otherwise burdensome. *Id.*

The Court addresses these arguments in turn.

### A.    Geographical Limits

Fluent argues that the Subpoena is invalid because it requires that documents be produced at Hernandez's counsel's office in Boston, which is more than 100 miles from Fluent's office in New York. Fluent Mem. at 4. Hernandez counters that the Subpoena calls for electronic production to Hernandez's counsel via uploading of documents. Under the case law, he argues, production by this means would be deemed to occur in New York, as such is where Fluent would upload the documents. Resp. Mem. at 3.

For two independent reasons, Fluent is wrong to claim a breach of the geographic limits in Rule 45(d)(3)(A)(ii).

First, the case law favors Hernandez as to this point. Federal courts have universally upheld, as consistent with the Rule, this production mode—in which the subpoenaed entity, at all times acting within 100 miles of its office, uploads documents for retrieval by counsel for the party who issued the subpoena. As one district court has summarized, "The courts focusing on

that rule have tended to do so while keeping in mind the expectation of cooperation among those involved in the subpoena and *the practical reality that production will typically be accomplished electronically or by mail.*" *CresCom Bank v. Terry*, 269 F. Supp. 3d 708, 713 (D.S.C. 2017) (emphasis added) (enforcing subpoena in anticipation of electronic or mail production); *see also D'Souza v. Marmaxx Operating Corp.*, No. EP-15-CV-00256-DCG, 2017 WL 1322243, at *6 (W.D. Tex. Apr. 7, 2017) (directing parties to "confer and agree on a proper place and a cost-effective method of production, including electronic means"); *Sams v. GA W. Gate, LLC*, 316 F.R.D. 693, 97 (N.D. Ga. 2016) (permitting subpoenaed company to produce documents at its office or by email); *Westmore Equities, LLC v. Vill. of Coulterville*, No. 3:15-CV-241-MJR-DGW, 2016 WL 695896, at *2 (S.D. Ill. Feb. 22, 2016) (admonishing lawyers to "cooperate and use common sense to facilitate the sensible production of documents and ESI"); *see also* Fed. R. Civ. P. 45 advisory committee's notes to 2013 amendment (noting that "parties often agree that production, particularly of electronically stored information, be transmitted by electronic means" and that Rule 45(c)(2)(A) does not prohibit such arrangements). Fluent has not pointed to any contrary case authority, to wit, cases holding that electronic production of documents in the manner called for by the Subpoena would violate the 100-mile limit.

Second, as an alternative, plaintiffs' counsel has offered to travel to New York City—where Fluent is based—to retrieve the documents, which it asks be uploaded to a portable hard drive. Resp. Mem. at 4. This mode of production—contemplating onsite pickup in New York City—would also comply with Rule 45(c).

## B.    Relevance

As the party issuing the Subpoena, Hernandez must, at the outset, demonstrate that he seeks relevant documents. Upon such a showing, the burden shifts to Fluent to show undue

8

burden. *See Griffith*, 2007 WL 1222586, at *2.

Fluent disputes, on two grounds, that certain documents sought by the Subpoena are relevant. First, Fluent argues that because Hernandez did not receive calls until March 2018, the demand for documents dating to January 1, 2015 includes years' worth of irrelevant documents. Fluent Mem. at 7. Second, Fluent contends that the requests are not tailored to conduct that would violate the TCPA (*i.e.*, calls and text messages initiated by automated services) in the manner alleged by Hernandez. *Id.* at 8. The Court addresses these global objections and then considers individual requests.

As to the first objection, the Court finds that Hernandez has not demonstrated that records created before January 1, 2018 are relevant to his claims. Fluent rightly notes that Hernandez has "made no effort whatsoever to limit the Subpoena to the time frame when Plaintiff Hernandez was allegedly first called, *to wit*, March 2018, or to the Fluent campaign then existing." Fluent Reply at 2. Hernandez does not claim himself to have visited any Fluent website before 2018. Nor, to date, has he come forward with evidence of similar practices occurring before that date, let alone three years prior to it. Hernandez Aff. at 2. The Court will therefore narrow the scope of the Subpoena to include only documents from January 1, 2018 to the present.

As to the second objection, the Court similarly finds that Hernandez's document requests are too sweeping insofar as they seek records for all calls and text messages made on behalf of IDT. Hernandez's claims solely concern calls made via ATDS. These may well prove to be most of the calls made on behalf of IDT. But this does not justify a request for records relating to all calls made on behalf of IDT, even those made by other means. The Court therefore will narrow the scope of the Subpoena so as to cover only calls made via ATDS.

9

With these two global modifications, the Court considers the relevance of each individual request.

*Request Nos. 1–2*: The documents demanded by these requests are, for the most part, relevant to claims in the Complaint. Hernandez brings TCPA claims on behalf of a putative class. Assuming *arguendo* that Hernandez's individual claims survive the potential threshold challenge discussed *infra* and that he eventually moves for class certification, evidence as to the treatment of other class members would be necessary to enable the parties effectively to litigate, *inter alia*, whether common questions predominate such that resolution of Hernandez's claims can fairly resolve claims made on behalf of absent class members. *See* Fed. R. Civ. P. 23 (b)(3). To be sure, determining whether common issues predominate would not require the identification of each person called, as Request No. 1 seeks. However, the other information sought (e.g., the text of the response and whether there had been prior written consent to such contact by the person called) would be germane. For the same reason, Request No. 2, which seeks the identity of third parties possessing records responsive to Request No. 1, seeks relevant information.

*Request Nos. 3–7*: The documents demanded in Request Nos. 3–7 are also plainly relevant to Hernandez's claims against IDT, from which he seeks monetary and injunctive relief as a result of alleged TCPA violations. Request Nos. 3–6 seek documents related to Fluent's process for obtaining TCPA-compliant consent from prospective consumers. And Request No. 7 demands documents keyed to Hernandez and/or his phone number. The information sought by these requests would be germane to Hernandez's claims regardless whether class certification is sought or granted.

*Request Nos. 8–9*: Hernandez has failed to articulate a non-conclusory reason why

responsive documents to these requests are relevant to his claims. Request No. 8 seeks "[a]ll documents and communications, including emails, text messages, calendar entries, meeting notes, voicemails, and Skype logs, concerning [IDT]." Subpoena at 3. Conceivably, this mass of materials could include items of relevance, but the request is so broad as to overwhelmingly seek clearly irrelevant materials. And to the extent that Request No. 8 might unearth relevant materials, Hernandez has not shown why such material would not be independently responsive to one or more of Request Nos. 1–7. *See, e.g.*, *Hermitage Glob. Partners LP v. Prevezon Holdings Ltd.*, No. 13 Civ. 6326 (TPG), 2015 WL 728463, at *5 (S.D.N.Y. Feb. 19, 2015) (quashing subpoena because its requests were "essentially duplicative" of those of another subpoena in same action); *Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 380, 383 (S.D.N.Y. 2011) (quashing subpoena as duplicative for requesting a subset of documents covered by a different subpoena); *Koch v. Greenberg*, No. 07 Civ. 9600 (BSJ) (DF), 2009 WL 2143634, at *3 (S.D.N.Y. July 14, 2009) (quashing subpoena request encompassed by another request).

Request No. 9 is similarly problematic. It seeks, without qualification, all communications between Fluent and any third party regarding this litigation. But that request is completely untailored. It stands largely to pick up documents that do not bear on liability or damages issues. Hernandez speculates that documents would be "of central relevance" if they were to reveal that Fluent has admitted liability, *i.e.*, that "Fluent has accepted responsibility for claims arising out of the purportedly TCPA compliant consent it provided." Resp. Mem. at 7. That, however, is not the gravamen of Request No. 9, which only incidentally would pick up any such hypothetical confession. Accordingly, finding Request Nos. 8–9 dominantly to seek irrelevant documents, the Court quashes these requests.

## C.    Undue Burden

Fluent makes three arguments why the Subpoena—which the Court has now pruned to eliminate Requests 8 and 9—is unduly burdensome. First, it contends that it has already produced evidence sufficient to prove IDT's affirmative defenses that Hernandez consented (1) to being contacted by or on behalf of IDT and (2) to resolving any dispute arising out of those communications through arbitration. Fluent Mem. at 6. Second, it argues that because no class has been certified, a broad request for documents bearing on claims of putative class members as opposed to Hernandez is premature. *Id.* at 7. Third, it contends that, because it is not a party to this action, the Court should not order it to produce business records containing proprietary or confidential information, such as recipients' names and contact information. *Id.* at 8–9. Opposing these arguments, Hernandez denies consenting to being contacted or to arbitration of his claims, asserts that the materials sought would assist him to litigate an eventual motion for class certification, and contends that Fluent has not shown why production of the materials sought would be detrimental to it. Hernandez Aff. at 2; Resp. Mem. at 4.

The Court's judgment is that there is substantial force to Fluent's objections, to the extent that Fluent opposes producing records that are not pertinent to Hernandez's claims. In particular, Fluent has adduced evidence suggesting that Hernandez agreed not only to be contacted, but to arbitrate this very type of controversy. This proof consists of an affidavit by Harshit Cokshi, a web computer system engineer employed by Fluent, attesting that data in Fluent's database reflects that Hernandez—while completing the registration form on a Fluent-owned and operated website, http://www.consumerproductsusa.com—consented both to be contacted and to resolve any ensuing dispute in arbitration. Cokshi Aff. at 1.

To be sure, Hernandez disputes giving Fluent either form of consent. He attests that he

"never visited th[at] website" and that he did not "authorize or instruct anyone to do so on [his] behalf." Hernandez Aff. at 2. He also appears, implicitly, to dispute the validity of any consent that was procured from him. And, although not noted by Hernandez, there is an unresolved issue whether *IDT* has the right to compel Hernandez to arbitrate, or whether that right belongs solely to Fluent. This Court thus does not presume to forecast whether Hernandez or IDT would prevail if IDT were to move in the Northern District of Illinois to compel arbitration of Hernandez's claims and/or for summary judgment on these claims based on Hernandez's purported consent to be called. But the materials that Fluent has produced suggest a meaningful possibility that IDT may succeed on one or both such motions. And a ruling that either moved Hernandez's claims to an arbitral forum or extinguished these claims altogether through an early grant of summary judgment would leave Hernandez without an apparent basis to pursue classwide relief or to seek records related to putative class claims from third parties such as Fluent.

As a matter of guarding against a burden, this scenario favors limiting the scope of the subpoena until it can be determined whether IDT, in the underlying litigation in the Northern District of Illinois, intends to pursue either such motion directed at Hernandez's claims and, if it does, whether such a motion prevails. The Court accordingly holds that third party Fluent, for the time being, should be obliged to produce only documents relevant to claims brought by Hernandez on his own behalf. To the extent the Subpoena pursues documents that would be germane only in the event of a motion for class certification or of classwide litigation, the Court quashes the subpoena. This ruling is, of course, without prejudice to Hernandez's right to subpoena Fluent anew for such materials, in the event that the above motions suggested by

Fluent's response are not made or, if made, prove unsuccessful.[3]

Applying these principles to the Subpoena's surviving requests (Nos. 1–7), the Court therefore will enforce these requests to the extent they bear on *Hernandez's own claims*. The Court has already limited the scope of these claims to materials bearing on conduct on or after January 1, 2018, and to Fluent's efforts to reach customers on behalf of IDT by means of ADTS. The Court further limits these requests to documents relevant to Hernandez's own claims. Accordingly, Request No. 1 is sustained to the extent it seeks the information recited relating to communications to Hernandez; Request No. 2 is sustained to the extent it documents identifying any third party who may be in possession of records responsive to Request No. 1 as modified here; Request No. 3 is sustained to the extent it seeks the source of phone number(s) of Hernandez's that were provided to IDT; Request Nos. 4–6 are sustained to the extent they seek information about whether Fluent obtained consent from Hernandez to the receipt of such calls; and Request No. 7 is sustained to the extent it seeks all documents regarding Hernandez or his phone number. These requests are otherwise quashed, on account of undue burden, without prejudice to Hernandez's right to renew the broader requests in the Subpoena in the event that Hernandez's claims in the Northern District survive the motions that Fluent's opposition papers anticipate.

---

[3] In light of this ruling, the Court does not have occasion to evaluate the issue suggested by Fluent's second burden objection: the extent to which a subpoena for Fluent's records bearing on putative class members other than Hernandez may properly issue, consistent with Rule 45(a)(1), in the service of a motion for a class certification. The Court also does not have occasion to evaluate Fluent's third burden objection: that the identities and contact information of non-parties whom Fluent contacted on IDT's behalf should be protected as confidential business information. *See UMB Bank, N.A. v. Sanofi*, No. 15 Civ. 8725 (GBD) (RWL), 2017 WL 6398628, *1 (S.D.N.Y. Nov. 22, 2017) (court should "be particularly sensitive to weighing the probative value of the information sought against the burden of production on the nonparty").

**CONCLUSION**

For the foregoing reasons, and to the extent indicated herein, the Court will enforce in part, while quashing in part, Hernandez's Subpoena directed at records of third-party Fluent. Subject to any orders by the Northern District of Illinois modifying this schedule, Fluent shall produce the requested documents within the next three weeks (*i.e.*, no later than May 28, 2019). The Court respectfully requests that the Clerk of Court terminate the motion pending at Dkt. 1 and close this case in this District.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: May 7, 2019
New York, New York